**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

KOCH FOODS, INC.                                        **PLAINTIFF**

**V.**                                        **CAUSE NO. 3:16-cv-355-DCB-MTP**

PATE DAWSON COMPANY, INC., <u>et al</u>.                **DEFENDANTS**

## <u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the Court on cross-motions for summary judgment **[Doc. Nos. 85, 87]** filed by plaintiff Koch Foods, Inc. ("Koch") and defendants Malcolm Sullivan, Micah Sullivan, and other unidentified officers and directors of Pate Dawson Company (collectively, "Defendants"). Having considered the motions, responses, and applicable statutory and case law, and being otherwise fully informed in the premises, the Court finds as follows:

### I.  <u>Background</u>

This is a commercial dispute between a major poultry processor and the former officers and directors of a defunct foodservice distributor with whom it did much business. The poultry processor claims that the foodservice distributor, while on the verge of financial ruin, ordered $3.6 million in poultry products with neither the intention nor the ability to pay. The foodservice distributor disagrees.

A.  The Parties

Plaintiff Koch is a major poultry processor. The Pate Dawson Company ("PDC") was a foodservice distributor. Defendants are the former officers and directors of PDC.

For about eight years, Koch delivered "specialized chicken products" to PDC [Doc. Nos. 86, ¶¶34-36; 92, ¶¶34-37]. PDC would then sell the chicken products to restaurants such as Bojangles' Famous Chicken 'N Biscuits, a southeastern regional fast-food chain and PDC's biggest customer [Doc. Nos. 86, ¶¶34-36; 92, ¶¶34-37]. This suit arises from $3.6 million in orders PDC placed with Koch for delivery to Bojangles.

The parties' payment arrangement was straightforward. Once PDC delivered Koch's chicken products, Bojangles paid PDC for the cost of (1) shipping; and (2) the chicken products it had delivered [Doc. Nos. 86, ¶¶37-38; 92, ¶¶37-38]. PDC then paid Koch a portion of those payments [Doc. Nos. 86, ¶¶37-38; 92 ¶¶37-38]. Koch invoiced PDC once Koch's chicken products had been delivered to Bojangles [Doc. Nos. 86, ¶37; 92, ¶37]. PDC ordinarily paid each invoice within 21 days [Doc. Nos. 86, ¶37; 92, ¶37].

B.  PDC's Financial Status

PDC was balance sheet insolvent in 2014 [Doc. Nos. 86, ¶1; 92, ¶1]. It promptly enlisted a restructuring firm, Huron Consulting Group, [Doc. Nos. 86, ¶2; 92, ¶2] and posted a net loss

of over $5.7 million for the fiscal year ending in June of 2014 [Doc. Nos. 86, ¶3; 92, ¶3].

Bojangles ended its business relationship with PDC in September 2015 [Doc. Nos. 86, ¶4; 92, ¶4]. As a result, PDC lost about 60% of its revenue [Doc. No. 92, ¶5]. After learning that PDC had lost its biggest customer in Bojangles, PNC Bank, PDC's senior lender, informed PDC that its line of credit would not be renewed [Doc. Nos. 86, ¶6; 92, ¶6]. PDC owed PNC Bank about $13 million at the time [Doc. Nos. 86, ¶7; 92, ¶7]. The parties agree that these events damaged PDC's business prospects; however, they dispute the degree of damage done: whether PDC's business was at this point certain to fail [Doc. Nos. 86, ¶9; 92, ¶9].

To mitigate damage caused by PNC Bank's non-renewal of PDC's line of credit, Huron advised PDC to find a "debt replacement facility" [Doc. Nos. 86, ¶7; 92, ¶7]. Huron further counseled that PDC needed to find a debt replacement facility if it wished to continue its normal course of business [Doc. Nos. 86, ¶8, 92, ¶8]. The parties dispute the odds that PDC would find the facility it admittedly needed to maintain its business.

C. <u>The Relevant Orders</u>

From December 2015 to February 2016, PDC placed 38 purchase orders with Koch for chicken products worth about $3.6 million [Doc. Nos. 86, p. 3; 92, p. 5]. In March 2016, PDC sent Koch a proposed payment schedule for its outstanding invoices [Doc. Nos.

86, ¶10; 92, ¶10]. PDC paid Koch about $106,000 for the first invoice in March 2016 [Doc. No. 92, ¶16]. The parties dispute whether this was an "ordinary course" payment showing that PDC was cash flow solvent, or a delayed payment signaling that PDC was not paying its bills as they became due.

D. PDC's Transition Period

Around the time of its last order with Koch, PDC sought a loan from AloStar Bank [Doc. Nos. 86, ¶17; 92, ¶17]. PDC hoped the AloStar loan would allow it to meet the terms of its payment plan with Koch [Doc. No. 92, ¶16]. But the PDC – AloStar loan deal fell through in April 2016 [Doc. Nos. 86, ¶21; 92, ¶21]. Four months later, Cheney Brothers, Inc. bought PDC's assets [Doc. Nos. 86, ¶21; 92, ¶21].

During its transition period, PDC paid two entities owned by the Sullivan family, P&D Corporation and P and S One, LLC [Doc. Nos. 86, ¶24; 92, ¶24]. The parties dispute whether PDC, or an entity agreeing to pay Koch on its behalf, has made good on any of the remaining invoices [Doc. Nos. 86, ¶40; 92, ¶40].

E. This Suit

In May of 2016, Koch sued PDC, Malcolm Sullivan, Micah Sullivan, and Mike Pate Jr. for breach of contract, breach of fiduciary duty, unjust enrichment, and fraudulent misrepresentation [Doc. No. 1].

After a period of discovery, Koch amended its complaint to allege the following claims against defendants Malcolm Sullivan, Micah Sullivan, and Mike Pate Jr.: (1) breach of fiduciary duty [Doc. No. 49, ¶¶44-45]; (2) constructive fraud [Doc. No. 49, ¶¶46-47]; (3) unfair and deceptive trade practices [Doc. No. 49, ¶¶48-49]; and (4) conspiracy [Doc. No. 49, ¶¶55-58]. The Court does not address the claims asserted against PDC because the parties have informed the Court that PDC's successor, Cheney Brothers, Inc., has settled those claims with Koch [Doc. Nos. 85, p. 1; 91, ¶2].

## II. Law

### A. Summary Judgment Standard

The Court evaluates cross-motions for summary judgment under the familiar Rule 56(a) standard. See Shaw Constructors v. ICF Kaiser Eng'rs, Inc., 395 F.3d 533, 538-39 (5th Cir. 2004). Summary judgment is properly entered if the movant shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a).

On cross-motions for summary judgment, the Court reviews each party's motion independently, viewing the evidence and inferences in the light most favorable the non-movant. Ford Motor Co. v. Texas Dep't of Transp., 264 F.3d 493, 498 (5th Cir. 2001); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 2720 (3d ed. 1998).

The movant in each summary judgment motion must "inform the district court of the basis for its motion, and identify those portions of the [record] . . . which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant makes this initial showing, then the burden shifts to the non-movant to "designate specific facts showing that there is a genuine issue for trial." Davis v. Fort Bend Cty., 765 F.3d 480, 484 (5th Cir. 2014). A party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

B. Conflict of Laws

Although this Court sits in Mississippi, no party is a Mississippi citizen, and the parties' relationship is centered elsewhere. Thus, the Court must determine which state's substantive law should apply. The parties agree that North Carolina law governs three of four claims; however, the Court conducts its own conflict of laws analysis here.

Because this Court's jurisdiction is based on diversity of citizenship, the Court applies state substantive law. Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996); Erie R. Co. v. Tompkins, 304 U.S. 64, 78-79 (1938). The Supreme Court of the United States has long held that state conflict of law rules are

substantive under <u>Erie</u>. <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496 (1941); <u>Williams v. Liberty Mut. Ins. Co.</u>, 741 F.3d 617, 620 (5th Cir. 2014). Thus, this Court applies the conflict of law rules of Mississippi.

Under Mississippi's conflict of laws regime, the Court first decides whether there is a "true conflict" between the laws of two states with an interest in the litigation. <u>South Carolina Ins. Co. v. Keymon</u>, 974 So. 2d 226, 230 (Miss. 2008) (en banc). Here, a "true conflict" exists between the laws of Mississippi and North Carolina relative to Koch's breach of fiduciary duty,[1] constructive fraud,[2] and unfair and deceptive trade practices claims.[3] Because the laws of Mississippi and North Carolina are in accord on the elements of conspiracy,[4] the Court applies Mississippi's law of

---

[1] Under Mississippi law, "[a] director occupies a fiduciary position toward creditors." <u>Cooper v. Mississippi Land Co.</u>, 220 So. 2d 302, 307 (Miss. 1969). An officer or director, under North Carolina law, owes such a duty only in limited circumstances. <u>See</u> <u>Keener Lumber Co. v. Perry</u>, 560 S.E.2d 817, 824 (N.C. Ct. App. 2002).

[2] Constructive fraud is a statutory claim under Mississippi law, MISS. CODE ANN. § 15-3-107, requiring proof of different elements than common law constructive fraud under North Carolina law. <u>See</u>, <u>e.g.</u>, <u>Clay v. Monroe</u>, 658 S.E.2d 532, 536 (N.C. Ct. App. 2008)

[3] Mississippi and North Carolina have separate laws creating claims against businesses engaged in unfair trade practices. <u>Compare</u> MISS. CODE ANN. § 75-24-5 <u>with</u> N.C. GEN. STAT. § 75-1.1.

[4] <u>Compare</u> <u>Harris v. Town of Woodville</u>, 196 So. 3d 1121, 1131 (Miss. Ct. App. 2016) <u>with</u> <u>Dove v. Harvey</u>, 608 S.E.2d 798, 800 (N.C. Ct. App. 2005).

conspiracy. See Daniels v. Crocker, 2017 WL 2505196, *4, __ So. 3d
__ (Miss. 2017).

Finding a "true conflict" exists on three of Koch's four
claims, the Court conducts a three-step analysis: "(1) determine
whether the laws at issue are substantive or procedural; (2) if
substantive, classify the laws as either tort, property, or
contract; and (3) look to the relevant section of the Restatement
(Second) of Conflict of Laws." Hartford Underwriters Ins. Co. v.
Foundation Health Servs. Inc., 524 F.3d 588, 593 (5th Cir. 2008)
(citing Zurich Am. Ins. Co. v. Goodwin, 920 So. 2d 427, 432 (Miss.
2006)).

Regarding the first step, forum law dictates whether an issue
is substantive or procedural. 1A C.J.S. Actions § 41. Under
Mississippi law, few laws qualify as procedural: statutes of
limitations, awards of attorney's fees, and awards of prejudgment
interest. Zurich, 920 So. 2d at 433. Each of the laws at issue
here, concerning elements of tort claims, is "substantive" under
Mississippi law.

Regarding the second and third steps, breach of fiduciary
duty, constructive fraud, and unfair trade practices are tort-
based claims governed by Chapter 7 of the Restatement (Second) of
Conflict of Laws, Section 145 and Section 6.

With respect to each claim, Chapter 7 of the Restatement
(Second) of Conflict of Laws directs the Court to apply the law of

the state with the "most significant relationship" to the occurrence and parties in light of the following "contacts": (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered. Ellis v. Trustmark Builders, Inc., 625 F.3d 222, 226 (5th Cir. 2010); RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145.

The Court evaluates these tort-specific contacts in light of seven general choice-of-law considerations: (a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability, and uniformity of result; and (g) ease in the determination and application of the law to be applied. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(2).

The Section 145 "contacts" and Section 6 "principles" "defy mechanical application —— they are less 'rules of law' than generally-stated guideposts." McDaniel v. Ritter, 556 So. 2d 303, 310 (Miss. 1989).

Regarding the breach of fiduciary duty claim, the only contacts relevant here are (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; and (c) the place of incorporation and place of business of the parties. <u>See</u> RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2).

The place where the injury occurred is difficult to determine but is likely Mississippi or Illinois. Mississippi could qualify as the place of injury because Koch Foods of Mississippi, LLC sold PDC the chicken products for which Koch contends PDC failed to pay.[5] Illinois could qualify because that is Koch's "nerve center," and therefore the place where any business loss caused by PDC's non-payment would be most acutely felt.

To the extent the place of the conduct causing Koch's injury is identifiable, it is likely the place where PDC was incorporated and maintained its principal place of business —— North Carolina. The "place of business" criterion also points toward North Carolina law. Although Koch is an Illinois corporation with a principal place of business in Illinois, PDC was a North Carolina corporation, and the Defendants are North Carolina citizens.

A review of the Section 6 "principles" confirms that North Carolina law should govern this claim. North Carolina has a strong interest in regulating the conduct of corporations doing business

---

[5] Koch Foods of Mississippi, LLC assigned to Koch Foods, Inc. the unpaid invoices for collection [Doc. No. 49, ¶5].

within its borders. See United Roasters Inc. v. Colgate-Palmolive Co., 485 F. Supp. 1041, 1046 (E.D. N.C. 1979). The parties have not identified, and the Court is unaware of, a forum policy or interest sufficiently important to trump North Carolina's regulatory interest. Thus, the Court finds that North Carolina is the place with the "most significant relationship" to the parties with respect to Koch's breach of fiduciary duty claim.

Koch's breach of fiduciary duty claim is based on the same underlying facts as its other claims. The nebulous "place of injury" criterion is constant across all claims. So too is the equally hazy "place of conduct causing injury" criterion. Thus, the same conflict of laws analysis and conclusion should follow for Koch's constructive fraud and unfair and deceptive trade practices claims.

In sum, the Court applies the law of North Carolina to Koch's breach of fiduciary duty, constructive fraud, and unfair and deceptive trade practices claims. The law of Mississippi governs Koch's conspiracy claim.

C.  Breach of Fiduciary Duty

With one exception, officers and directors of a corporation do not owe a fiduciary duty to the corporation's creditors. USA Trouser, S.A. de C.V. v. Andrews, 612 Fed. App'x 158, 160 (4th Cir. 2015) (per curiam) (quoting Keener Lumber Co. v. Perry, 560 S.E. 2d 817, 824 (N.C. Ct. App. 2002)). The exception is

"circumstances amounting to a 'winding-up' or dissolution of the corporation." <u>Keener</u>, 560 S.E. 2d at 825.

To determine whether a corporation is "winding up," the Court considers:

> (1) whether the corporation was insolvent, or nearly insolvent, on a balance sheet basis;[6] (2) whether the corporation was cash flow insolvent; (3) whether the corporation was making plans to cease doing business; (4) whether the corporation was liquidating its assets with a view of going out of business; and (5) whether the corporation was still prosecuting its business in good faith, with a reasonable prospect and expectation of doing so.

<u>USA Trouser</u>, 612 Fed. App'x at 160.

A corporation is balance sheet insolvent when its liabilities exceed its assets. <u>See</u> <u>Matrix Grp. Ltd. v. Rawlings Sporting Goods Co.</u>, 477 F.3d 583, 590 (8th Cir. 2007). Cash flow insolvency implies an "inability to meet maturing obligations as they fall due in the ordinary course of business." <u>Id.</u> at 590; <u>see</u> <u>also</u> J.B. Heaton, <u>Solvency Tests</u>, 62 Bus. Law. 983, 988-95 (2007).

If and when a fiduciary duty to a creditor arises, the officers and directors of a corporation "must treat all creditors of the same class equally by making payments to such creditors on a pro rata basis." <u>Keener</u>, 560 S.E.2d at 827 (citing <u>Bassett v. Cooperage Co.</u>, 125 S.E. 14 (N.C. 1924)). North Carolina law also

---

[6] A corporation is not insolvent "merely because it is embarrassed and cannot pay its debts as they become due, or because its assets, if sold, would not bring enough to pay all its liabilities, if it is still prosecuting its business in good faith, with a reasonable prospect and expectation of continuing to do so." <u>USA Trouser</u>, 612 Fed. App'x at 160 n. 2.

imposes liability upon officers and directors who take advantage of their knowledge of corporate affairs to the detriment of creditors to whom they owe a fiduciary duty. Keener, 560 S.E. 2d at 826.

Generally, the existence of a fiduciary duty is a question of fact for the jury. See Tin Originals, Inc. v. Colonial Tin Works, Inc., 391 S.E.2d 831, 832 (N.C. Ct. App. 1990).

D.   Constructive Fraud

To recover for constructive fraud, Koch must prove "(1) a relationship of trust and confidence; (2) that the defendant took advantage of that position of trust in order to benefit himself; and (3) that plaintiff was, as a result, injured." Clay v. Monroe, 658 S.E.2d 532, 536 (N.C. Ct. App. 2008).

The second element is not met if the benefit sought was simply a continued relationship or the payment of a fee to the defendant for work it actually performed. White v. Consolidated Planning, Inc., 603 S.E.2d 147, 156 (N.C. Ct. App. 2004) (citing Sterner v. Penn, 583 S.E.2d 670, 674 (N.C. Ct. App. 2004)).

E.   Unfair and Deceptive Trade Practices (UDTPA)

To recover under North Carolina's Unfair and Deceptive Trade Practices Act, N.C. GEN. STAT. § 75-1.1, Koch must prove "(1) an unfair or deceptive act or practice; (2) in or affecting commerce; (3) which proximately caused injury to the plaintiff or his

business." Champion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC, 845 F.3d 104, 109 (4th Cir. 2016).

What qualifies as an "unfair" or "deceptive" trade practice "is a somewhat nebulous concept." Curtis B. Pearson Music Co. v. Everitt, 368 Fed. App'x 450, 455 (4th Cir. 2010). UDTPA liability ensues when a practice is either "unfair" or "deceptive" —— it need not be both. Id. at 455. A practice is "deceptive" if "it has a tendency or capacity to deceive." Champion Pro Consulting, 845 F.3d at 109 (citing Dalton v. Camp, 548 S.E.2d 704, 711 (N.C. 2001)). A practice is "unfair" when "it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Carcano v. JBSS, LLC, 684 S.E.2d 41, 50 (N.C. Ct. App. 2009). A practice is classified as "deceptive" or "unfair" according to its effect on the "marketplace." Id. at 50.

Because the UDTPA provides for treble damages, "courts have been reluctant to classify every instance of wrongdoing in business transactions as a violation of the UDTPA." Curtis B. Pearson, 368 Fed. App'x at 455. Thus, North Carolina courts require "some type of egregious or aggravating circumstances." Dalton, 548 S.E.2d at 711.

### III. **Discussion**

A. Koch's Motion for Summary Judgment

Koch seeks summary judgment on all of its claims. Its big-picture contention consists of two parts: (1) a fiduciary duty arose by operation of law around the time PDC ordered over $3.5 million in chicken products from Koch; (2) Defendants breached that duty by preferring family and related-entity creditors over Koch.

i). Existence of a Fiduciary Duty

As officers and directors of PDC, Defendants owed no duty to Koch, a creditor of PDC, under North Carolina's "general rule." USA Trouser, 612 Fed. App'x at 160. The key inquiry is when PDC experienced "circumstances amounting to a winding up." Keener, 560 S.E.2d at 825. Until then, Defendants owed no fiduciary duty to Koch. Id.

Koch contends PDC was "winding up" as early as September 2015, when PDC lost its chief customer, Bojangles. Defendants counter that PDC remained viable after the split. They insist that PDC was not "winding up" until April 14, 2016, when PDC's loan deal with AloStar collapsed. The Court turns to the five Keener factors, viewing them in the non-movant Defendants' favor, to determine if the undisputed facts show that Defendants owed a fiduciary duty to Koch before April 14, 2016.

The first factor — balance sheet insolvency — supports Koch's position. The parties do not dispute that PDC was balance sheet insolvent as early as 2014 [Doc. Nos. ¶86, 1; ¶92, 1]. But balance sheet insolvency alone is insufficient to show a "winding up" triggering a fiduciary duty. See Whitley v. Carolina Clinic, Inc., 455 S.E.2d 896, 899 (N.C. Ct. App. 1995).

The parties dispute many of the facts necessary to evaluate the second factor, cash flow insolvency, and the fifth factor, conducting business in good faith. USA Trouser, 612 Fed. App'x at 160. Because these factors are analytically related, the Court considers them together.

Koch theorizes that PDC's loss of Bojangles portended the end of the business. After Bojangles' exit, Koch reasons, PDC was cash flow insolvent and no longer "prosecuting its business in good faith." See USA Trouser, 612 Fed. App'x at 160. In support of its position, Koch marshals an export report purporting to show that PDC was cash flow insolvent beginning in January 2016, [Doc. No. 85-11, p. 6] and deposition testimony of Huron Consulting's Hugh Sawyer and Jamie Lilac concerning the deleterious effect losing Bojangles had on PDC's business [Doc. No. 86, ¶5]. Koch also cites Lance Buckert's deposition testimony that PDC belatedly paid Koch for just 1 of its 38 orders to prove that PDC was not paying its bills as they became due [Doc. No. 86, ¶¶39-40].

Defendants counter that losing Bojangles was a setback, but not one severe enough to derail the business entirely. Defendants offer evidence purporting to show that PDC remained a viable business until its deal with AloStar folded in April of 2016. Defendants' expert James Koerber opines that PDC was not "winding down" its business operations until June of 2016, and that PDC had "reasonable expectations of continuing operations" until April of 2016 [Doc. No. 91-1, p.5]. Defendants also point to the deposition testimony of Lance Buckert, contending PDC's payment of 1 of the 38 Koch invoices shows that it was cash flow solvent and paying its bills as they became due [Doc. No. 92, p. 14].

Viewing all facts and inferences in Defendants' favor, the Court finds summary judgment inappropriate on the issue of the existence of a fiduciary duty. Factual disputes abound concerning the cash flow solvency of PDC and the date on which it was no longer "conducting its business in good faith, with a reasonable prospect and expectation of doing so." USA Trouser, 612 Fed. App'x at 160.

For example, Huron's Hugh Sawyer and Jamie Lisac provided testimony which tends to show that PDC may not have been "winding down" as early as Koch claims. Lisac was optimistic that Huron could secure financing for PDC, and that such financing would enable PDC to continue its operations in the ordinary course [Doc. No. 85-9, pp. 18-19]. Sawyer testified that PDC "continued to

provide services to Bojangles' in the "normal course" until
February of 2016 [Doc. No. 85-9, p. 29]. Sawyer's testimony also
blunts the impact of PNC Bank's non-renewal of PDC's line of
credit. He testified that although PNC Bank opted not to renew
PDC's credit facility, it continued to support PDC [Doc. No. 85-
8, p. 30]. He further testified that Huron advised PDC to continue
to operate in the normal course" following Bogjanles' departure
[Doc. No. 85-8, p. 35].

The issue of the existence (and timing) of Defendants'
fiduciary duty should be determined by a jury. See Tin Originals,
391 S.E. at 832. Having concluded that genuine disputes as to
material facts preclude summary judgment as to the existence of a
fiduciary duty, the Court pretermits any discussion of breach and
damages, the remaining elements of a breach of fiduciary duty claim
under North Carolina law.

ii). Constructive Fraud

Like its claim for breach of fiduciary duty, Koch's claim for
constructive fraud requires proof that Defendants owed it a
fiduciary duty during the relevant time period. See Keener, 560
S.E.2d at 822-23. Because the Court has decided that the facts
that would create a fiduciary duty under Keener are disputed,
summary judgment is unwarranted.

iii). <u>Unfair and Deceptive Trade Practices (UDTPA)</u>

Koch cites two transactions which it contends should trigger UDTPA liability: (1) PDC's purchase of $3.6 million in chicken products from Koch with neither the means nor the intention of paying for it; and (2) preferential payments to corporations owned and controlled by members of the Sullivan and Pate families.

Regarding the first trigger, the same disputed facts that will establish whether Defendants owed Koch a fiduciary duty will also determine whether Defendants acted "unfairly" or "deceptively" in purchasing $3.6 million in chicken products from Koch from December 2015 to February of 2016.

UDTPA liability relative to this conduct turns on the disputed facts concerning PDC's cash flow solvency and its capacity to continue operations in the normal course after Bojangles' exit and PNC Bank's non-renewal of its line of credit. If it is proved that PDC placed its orders with Koch during a time at which an examination of PDC's financials reveal it could have had no reasonable expectation of paying for the orders and could have had no reasonable expectation of continuing business in the ordinary course, then such conduct would qualify as "unfair" under the UDTPA. <u>See</u> <u>Carcano</u>, 684 S.E. 2d at 50.

The Court is convinced that purchasing several million dollars' worth of a product with neither the means nor the intention of paying for it would "offend established public policy"

19

of North Carolina, see id., and imposing liability for such conduct would advance UDTPA's purpose of ensuring "good faith and fair dealings between buyers and sellers at all levels of commerce." Wilson v. Blue Ridge Elec. Membership Corp., 578 S.E.2d 692, 694 (N.C. Ct. App. 2003) (internal quotations omitted). But again, summary judgment on this issue is inappropriate because the parties dispute the critical facts about PDC's prospects of resuming ordinary business operations, its ability to pay bills in the ordinary course, and its intentions regarding deferred payment of invoices. A jury must resolve each such factual dispute to determine whether PDC indeed acted "unfairly" or "deceptively" in placing its December 2015 – February 2016 orders with Koch.

Regarding the second trigger, "preference payments" to related entities, the facts are not disputed. The parties agree that PDC paid P&D, a corporation owned by members of the Sullivan family, $65,000 per month in rent from December 2015 to April 2017. The parties agree that Malcolm Sullivan had minority interests in P&D ($2.34%) and P&S (25%) and that Mike Pate had a minority interest in P&D (4.43%). The critical inquiry, then, is the legal significance of these payments.

The parties cite no North Carolina case law imposing UDTPA liability on a preferential payment theory —— particularly in the absence of a breach of an underlying fiduciary duty or a misrepresentation. It appears that Koch attempts to bootstrap its

UDTPA claim with the facts it marshalled in support of its breach of fiduciary duty claim. Given this, and the absence of authority supporting UDTPA recovery on the sole basis of "preferential payments," the Court finds that Koch has not met its summary judgment burden and denies summary judgment at this point on this theory.

### iv.) Civil Conspiracy

Koch contends that the undisputed facts show that Defendants conspired to constructively defraud it out of several million dollars [Doc. No. 86, p. 21]. As the Court noted above, factual disputes preclude it from determining as a matter of law whether Defendants committed constructive fraud. Therefore, viewing the facts and law in Defendants' favor, the Court denies summary judgment to Koch and against Defendants on the issue of civil conspiracy liability.

### B. Defendants' Motion for Summary Judgment

Defendants moved for summary judgment on Koch's claims of breach of fiduciary duty (Count IV), constructive fraud (Count V), unfair and deceptive trade practices (Count VI) and conspiracy (Count VIII) [Doc. No. 87].

Defendants contend that Koch's breach of fiduciary duty claim should be dismissed because Defendants did not owe Koch a fiduciary duty as a matter of North Carolina law. And without an underlying fiduciary duty, Defendants reason, Koch's UDTPA, constructive

fraud, and conspiracy claims — each requiring a predicate wrong — cannot survive summary judgment [Doc. No. 88, p. 19].

### i). Breach of Fiduciary Duty and Constructive Fraud

Defendants argue that they owed no fiduciary to Koch until April 2016, when PDC's loan talks with AloStar ended [Doc. No. 88, p. 12]. Until the loan deal became unworkable, Defendants submit, PDC was "prosecuting its business in good faith, with a reasonable prospect and expectation of doing so." Keener, 560 S.E. 2d at 825.

On the fiduciary duty issue, Defendants' summary judgment evidence focuses on the financial status of PDC up to April 2016. As evidence that PDC was cash flow solvent until then, Defendants point to PDC's $105,000 payment to Koch in March of 2016 and characterize it as an "ordinary course" payment [Doc. No. 88, p. 12]. Aside from this payment, however, Defendants fail to cite to record evidence tending to show that PDC was paying its bills as they became due. See FED. R. CIV. P. 56(c)(1)(A) (assertions must be supported by citation to parts of materials in the record); Fennell v. Marion Ind. Sch. Dist., 804 F.3d 398, 414 n. 32 (5th Cir. 2015).

In opposition, Koch describes PDC circa December 2015 as a corporation fated to fail. It underscores PDC's admitted balance sheet insolvency, PDC's senior lender's non-renewal of PDC's line of credit, and PDC's loss of 60% of its revenue due to Bojangles' departure [Doc. No. 88].

Viewing the evidence in Koch's favor, the Court finds summary judgment on this issue inappropriate. North Carolina law discourages the entry of summary judgment on a plaintiff-creditor's breach of fiduciary duty claim unless the plaintiff fails to offer evidence from which a jury could conclude that the corporation was "winding up" or dissolving. USA Trouser, 612 Fed. App'x at 161. Indeed, "[w]here a plaintiff-creditor presents sufficient evidence, North Carolina courts allow the jury to determine whether the corporation was winding-up or dissolving and, thus, whether a director-creditor fiduciary relationship existed." Id. at 160 (citing Keener, 560 S.E.2d at 826). As the Court stated above relative to the fiduciary duty issue in Koch's motion, genuine issues of material fact remain regarding the cash flow solvency of PDC and the date on which it was no longer "conducting its business in good faith, with a reasonable prospect and expectation of doing so." USA Trouser, 612 Fed. App'x at 160. Therefore, the Court denies Defendants' motion for summary judgment on Koch's breach of fiduciary duty and constructive fraud claims.

## ii). Unfair and Deceptive Trade Practices (UDTPA)

Defendants argue that Koch's UDTPA claim must be dismissed because Koch has insufficiently pleaded the claim and because Koch cannot show that Defendants owed Koch a fiduciary duty during the relevant period [Doc. No. 88, p. 19].

On the first contention, the Court disagrees. Koch has pointed to record evidence which, if proved true, tends to show practices qualifying as "unfair" or "deceptive" under the UDTPA. See supra § III(A)(iii). In so doing, Koch is not merely resting upon the allegations in its pleadings; it is "set[ting] forth and support[ing] by summary judgment evidence specific facts showing the existence of a genuine issue for trial." Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998).

Defendants' second contention is not grounds for entry of summary judgment. The Court has highlighted the existence of genuine issues of material fact regarding the financial condition of PDC during the relevant period, and by extension, the point at which a fiduciary duty may have arisen under Keener. See supra §§ III(A)(i); III(B)(i).

Defendants fail to carry their summary judgment burden of proving the absence of material factual disputes on Koch's UDTPA claim. Therefore, the Court denies Defendants' motion for summary judgment on Koch's UDTPA claim.

### iii). Conspiracy to Constructively Defraud

Defendants ask the Court to enter summary judgment on Koch's conspiracy claim on the ground that Koch must prove that Defendants owed it a fiduciary duty but the undisputed facts and law show that Koch cannot do so [Doc. No. 88, pp. 19-20].

The viability of Koch's conspiracy claim rests on its constructive fraud claim. Because this Court has already determined that genuine issues of material fact preclude summary against Koch on that claim, summary judgment on Koch's conspiracy to defraud claim —— a claim founded upon the same disputed facts as Koch's constructive fraud and breach of fiduciary duty claims —— is improper.

## IV.  Conclusion

The claims in this case center on disputed facts regarding the financial status of PDC from December 2015 to February 2016. The jury's evaluation of these facts will determine whether Defendants owed Koch a fiduciary duty, and if so, whether it was breached. These same facts will color the jury's verdict on constructive fraud, UDTPA liability, and conspiracy because each theory of liability depends on the existence of a fiduciary duty —— specifically, the point at which PDC was no longer "prosecuting its business in good faith, with a reasonable prospect and expectation of doing so." Keener, 560 S.E.2d at 825.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment filed by Plaintiff Koch Foods, Inc. **[Doc. No. 85]** is **DENIED**;

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment filed by Defendants **[Doc. No. 87]** is **DENIED**;

SO ORDERED this the 25th day of October, 2017.

/s/ David Bramlette
UNITED STATES DISTRICT JUDGE